# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Norfolk Division

SHANE M. JENKINS, et al.,

        **Plaintiffs,**

                                      **Case No. 2:19-cv-00271**

v.

WAL-MART STORES, INC.,

        **Defendant.**

### WALMART'S MEMORANDUM IN SUPPORT
### OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Shane Jenkins exited the Colonial Heights Walmart store on June 16, 2018 with un-bagged merchandise in his cart; completely ignored a Walmart people greeter's[1] request for his receipt; and continued to leave the store with the un-bagged merchandise. The greeter followed Plaintiff to the parking lot to verify the merchandise had been purchased. When approached by the greeter, the Plaintiff would not stop, attracting the attention of two unknown customers who tackled him. Plaintiff did not take his merchandise with him and never returned to retrieve it. Plaintiff filed many claims against Walmart, but has three surviving claims of false imprisonment, assault and battery, and conversion that should be dismissed at summary judgment as Walmart had probable cause to stop the Plaintiff, and the claim of conversion cannot be maintained due to abandonment.

---

[1] A "people greeter" is a Walmart employee stationed at the front of the store.

I.    *Allegations*

In his Amended Complaint, Plaintiff alleges Walmart is liable for false imprisonment, assault and battery, and conversion.  He claims that the actions of Marvin Webb, a now-deceased Walmart door greeter, constituted false imprisonment and assault and battery.  Jenkins specifically contends that Webb committed these torts by grabbing and overturning Plaintiff's shopping cart, and stating, "Show me your receipt."   Doc. 20, ¶ 70.  Doc. 20, page 6.    Further, Jenkins contends Webb incited two bystanders to assist in apprehending Jenkins.  Doc. 20, ¶ 18.

As to the conversion claim, Jenkins claims that Walmart seized the merchandise in the shopping cart and refused to return the property or reimburse him.  Doc. 20, ¶ 93, 94.  Although Jenkins never returned to the store to obtain his merchandise, he claims Walmart intentionally converted Jenkins' property.  Doc. 20, ¶ 96.

On all three counts, Plaintiff also seeks punitive damages on the grounds Walmart's actions were willful, shocking, outrageous, wanton, oppressive, malicious, reckless, and evinced a spirit of criminal indifference to Jenkins' rights.  Doc. 20, ¶¶ 74, 89, 96.

II.    *Listing of Undisputed Facts*

Pursuant to Local Rule 56, the following is a list of the undisputed material facts:

1.  On June 16, 2018, an 80 year old store greeter, Marvin Webb (now deceased), asked Plaintiff to see his receipt.  Exhibit A, 62: 16-21 (Shane Jenkins Deposition).

2.  Webb was conspicuously dressed in a yellow Walmart vest and stationed inside the store at the exit.  Exhibit B, 10:55:34 AM (EDT) (Walmart Store Video).

3. Plaintiff did not acknowledge the greeter's request and exited the store with un-bagged merchandise in his cart. <u>Exhibit A</u>, 58:13-16.

4. At this store, walking out of the store with unpurchased merchandise was a very common method of theft. <u>Exhibit C</u>, ¶ 11 (Maria Faith Declaration).

5. After the incident took place, Plaintiff told another officer, "I didn't hear him [the greeter] say 'stop.' I was doing my honey to do list in my mind." <u>Exhibit D</u>, T17:56:35Z (Body Camera Footage from Axon Body Camera X81165688)

6. Webb can also be seen on police body camera footage talking with an officer soon after the accident. <u>Exhibit E</u>, T15:12:41Z (Body Camera Footage from Axon Body Camera X8108351).

7. The officer asked if Plaintiff showed Webb a receipt. Webb replied, "No, he wouldn't stop. . . He just kept running." <u>Exhibit E</u>, T15:12:41.[2]

8. Plaintiff agrees that he did not produce a receipt after being asked to by Webb. <u>Exhibit A</u>116:19-22. <u>Doc. 29</u>, Memorandum Opinion, p. 2.

9. All parties agree that the video of the incident is accurate. <u>Exhibit A</u>, 84:17-19.

10. Webb can be seen pursuing Plaintiff out of the store in store surveillance video of the parking lot entrance. <u>Exhibit B</u>, 10:55:35-10:55:42 AM (EDT).

11. Jenkins was walking quickly enough to pass other customers as he exited the <u>Exhibit B</u>, 10:55:34-10:55:41 AM (EDT).

---

[2] This out of court statement will be admissible at trial pursuant to FRE 807, because there is video footage of the conversation that took place on the day of the incident and it is highly probative evidence as it comes from the decedent himself close in time to the incident.

12. As Webb caught up, he put his hand on the side of Plaintiff's cart. Exhibit B, 10:55:40 AM (EDT).

13. According to Plaintiff, Webb again asked ("yelled") for Plaintiff's receipt. Exhibit A, 76: 11-20.

14. Webb touched Plaintiff's cart, not his person. Exhibit A, 64:3-8.

15. The cart overturned and the Plaintiff fell to the ground (Walmart contends the video shows that Plaintiff attempted to wrench his cart away, overcorrected, and fell to the ground. Plaintiff contends Webb pulled the cart away, causing him to lose his balance and fall.) Exhibit B, 10:55:42 AM (EDT).

16. Two unidentified customers subsequently ran over and tackled Plaintiff. Exhibit B, 10:55:43-10:55:55 AM (EDT).

17. Webb did not speak to or encourage either of the customers who touched Plaintiff. Exhibit A, 87:4-17. Exhibit B, 10:55:34-10:55:41 AM (EDT).

18. Within twelve minutes of the incident, police arrived. Exhibit B, 10:55:47 AM (EDT). Exhibit E, T15:02:43-15:03:05Z.

19. Three police officers investigated the incident. Exhibit E, T15:04:32.

20. After investigation, police determined Plaintiff had paid for his merchandise. Exhibit F, T15:11:00-15:14:27Z (Police Bodycamera Footage from X81165688).

21. Plaintiff was taken to the hospital via EMS and left Walmart without his merchandise. Exhibit A, 87:22-89:17.

22. As he was leaving, a police officer returned his receipt to him and said, "Your stuff is going to stay here at Walmart, I've already talked to the manager . . . can you come back

and pick it up in a little bit?  You'll be fine, okay?"  At which point Plaintiff nodded his head in the affirmative.  Exhibit F, T15:20:19Z.

23. Plaintiff and his wife testified that Plaintiff left his car at Walmart and returned to pick his car up when he was released from the hospital.  Exhibit A, 89: 1-17, 91-93:20-7, and Exhibit G, 29:1-7 (Frenny Rose Jenkins Deposition).

24. After leaving the hospital, Plaintiff and his wife went to the police station seeking a warrant against Webb.  Exhibit F, T17:54:23-17:54:26Z, and Exhibit A, 93:2-7.

25. The officer, Officer Duncan, would not bring assault and battery charges against the Walmart associate.  Exhibit A, 94:7-11.

26. During this conversation, the Officer Duncan reminded Plaintiff that Walmart was still holding his purchases for him to come and pick up at his convenience.  Plaintiff said to the officer, "No, I'm not going there" and left the police department.  Exhibit F, T17:58:55-17:59:15Z.

27. Prior to this lawsuit, Plaintiff never requested reimbursement for his purchase or asked about receiving credit for the items he purchased.[3]

28. Plaintiff sent Walmart a letter identifying alleged police misconduct and Walmart employee misconduct on June 18, 2018, describing that he "was attached by a Walmart employee and a customer.  The attack occurred near the handicap parking spaces."  Exhibit H. As part of that correspondence, he attached a June 18, 2018 letter sent to the Colonial Heights

---

[3] At his deposition, Plaintiff reported calling the store and asking about the attack with Walmart.  He did not ask about the items he purchased. Exhibit A, 111:16-112:5. He attempts to change this testimony in his errata sheet.  However, "an 'errata sheet' will not eradicate the import of previous testimony taken under oath." Lewis v. Virginia Baptist Homes, 1997 U.S. Dist. LEXIS 2562 * fn. 1 (W.D. Va. 1997) (quoting Rios v. Welch, 856 F. Supp. 1499, 1502 (D. Kan. 1994)).

Police Chief.  That letter described alleged police misconduct after an "attack" in the parking lot.

29. On June 24, 2018, Plaintiff sent another letter to Walmart titled "Second Notice – Victim Rights to Evidence" and identified an alleged attack by a Walmart employee and another customer.  Exhibit I.

30. On July 11, 2018, Claims Management Inc., a claims administration company for Walmart, sent Plaintiff a letter stating that his injury claim was being denied after reviewing the information he provided to CMI, and concluded that "CMI's investigation and evaluation of your claim indicate that the storekeeper was not at fault for your injury.  Therefore, we must respectfully deny your claim for liability payment for your injury."  The letter invited him to provide additional facts that could change their evaluation.  Exhibit J.

31. Plaintiff affirmatively stated that he never intended to return to Walmart and does not intend to return so long as they have a policy of receipt checking.  Exhibit D, 17:58:55; Exhibit A, 117:1-118:5.

ARGUMENT

*I.*  *Legal Standard for Summary Judgment*

A court should grant summary judgment when the pleadings, affidavits and deposition testimony demonstrate that there is no "genuine issue" as to any "material fact" in the case and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Phoenix Savings & Loan v. Aetna Casualty & Surety Co., 318 F.2d 245 (4th Cir. 1967).  Summary judgment is not a "disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to

secure the just, speedy and inexpensive determination of every action." <u>Celotex</u>, 477 U. S. at 327; <u>see also</u> FED. R. CIV. P. 1.

Once Walmart makes its initial showing, it is incumbent upon Plaintiff to point out specific facts showing that there is a genuine issue for trial. <u>Id</u>. at 324; <u>see also</u> FED. R. CIV. P. 56(e). Plaintiff cannot rely on conclusory or unsupported allegations to do so. <u>Matsushita</u>, 475 U. S. at 586; <u>see also</u> <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 364 (4th Cir. 1985).

There is no genuine issue for trial "when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 487, 106 S. Ct. 1348 (1986). If the undisputed facts show that any one of the elements necessary for Plaintiff to prevail has not been established, Plaintiff's entire claim fails as a matter of law, and Walmart is entitled to summary judgment. <u>Celotex</u>, 477 U. S. at 322-23.

When sitting in diversity jurisdiction, federal courts in Virginia apply substantive Virginia law. <u>Fisher v. Va. Elec. & Power Co.</u>, 258 F. Supp. 445, 477 (E.D.Va. 2003)(citing <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

II.   *Walmart Had Probable Cause to Insulate it From Claims of False Imprisonment or Assault and Battery*

Under Virginia law, merchants are permitted to detain persons suspected of shoplifting. <u>See</u> Code § 18.2-105.1. As such, merchants are exempt from civil liability for claims including false imprisonment and assault and battery if they had probable cause to believe an individual has engaged in shoplifting at the time of arrest, assault or battery. This "Shopkeeper's Privilege," has been codified:

> A merchant, agent, or employee of the merchant, who causes the arrest or detention of any person pursuant to the provisions of § . . .18.2-96 [petit larceny] . . . shall not be held civilly liable for . . . false imprisonment, false

arrest, or assault and battery of the person so arrested or detained, whether such arrest or detention takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, provided that . . . the merchant, agent or employee of the merchant, had at the time of such arrest or detention probable cause to believe that the person had shoplifted or committed willful concealment of goods or merchandise.

Code § 8.01-226.9.

The Fourth Circuit in applying this statute has observed that the "'scope of the exemption intended by the General Assembly was very broad'" and thus an "expansive rather than restrictive scope [is given] to the probable cause defense." Brandau v. J.C. Penney Co., 646 F.2d 128, 132 (4th Cir. 1981) (citing F.B.C. Stores, Inc. v. Duncan, 214 Va. 246, 198 S.E.2d 595, 598 (Va. 1981)). In addition, whether probable cause exists sufficient to defeat Plaintiff's claims of false imprisonment and assault and battery are appropriately resolved at the summary judgment stage. See Jones v. Target Corp., 341 F.Supp. 2d 583, 591-92, (E.D.Va. 2004) (granting defendant Target's motion for summary judgment because Target possessed probable cause to detain a customer for suspected shoplifting and was statutorily immune).

Probable cause is a "flexible, common-sense standard" and one that is determined by a "totality of the circumstances approach." Florida v. Harris, 568 U.S. 237, 240, 244 (2013). And while "probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Smith v. Munday, 848 F.3d, 248, 253 (4th Cir. 2017) (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998)).

The video and testimony in this case reveal that, based on the totality of the circumstances available to Webb at the time of this incident, Plaintiff appeared to be attempting to leave the store without paying for merchandise. Knowingly leaving Walmart with unpaid for merchandise is at least petit larceny. First, Plaintiff admits that he had un-bagged merchandise in his cart when he exited the store. Second, Webb asked Plaintiff to see his receipt, and observed

the Plaintiff keep walking.  Third, Plaintiff admits that he ignored the greeter's request to look at his receipt.

> The probable cause inquiry is conducted not from the customer's perspective, but rather from the facts as they appear to a reasonable merchant or its agents. . . . Thus, the inquiry does not depend on the beliefs or good intentions of the customer.  Put differently, the key inquiry is "the *merchant's reasonable perception* of the conduct."

Jones v. Target Corp., 341 F. Supp. 2d 583, 590 (E.D. Va. 2004) (quoting Hall v. Wal-Mart Stores East, Inc., 2003 U.S. Dist. LEXIS 21016 at 21) (internal citations omitted) (italics in original).  It does not matter whether Plaintiff made an honest mistake in ignoring the greeter because he was preoccupied, it matters what someone in Webb's shoes would have inferred based on Plaintiff's observable conduct.  Fourth, the greeter noted his subjective believe that Plaintiff was running away to his car (Plaintiff's speedy exit is corroborated by the video footage), and fifth, when the greeter caught up to Plaintiff, Plaintiff still did not produce a receipt.

Finally, as Maria Faith will testify, this particular store commonly experiences this method of attempted walk out shoplifting, which Webb and any greeter were aware of.  Exhibit C, ¶ 11.  This further supports the conclusion that a reasonable person in Webb's position as a greeter would infer Plaintiff was attempting to leave the store without paying.  See also Hall v. Wal-Mart Stores East, Inc., 2003 U.S. Dist. LEXIS 21016 at 21) (relying on the fact that Wal-Mart personnel face so many attempted thefts and accompanying "explanations" in evaluating whether Walmart had probable cause to detail a customer).

Because the undisputed facts show that Walmart had probable cause to suspect the Plaintiff of shoplifting at the time Webb followed him, and Plaintiff's claims of false

imprisonment and assault and battery should be dismissed because the Shopkeepers Privilege
applies as a matter of law.

III.    *Walmart Did Not Convert Plaintiff's Property, Plaintiff Abandoned It.*

Plaintiff has alleged that Walmart immediately seized his property and refused to return it
or reimburse him for it.  Doc. 20, ¶¶ 23, 94.

> To assert a claim for conversion, a plaintiff must prove by a preponderance of the
> evidence (i) the ownership or right to possession of the property at the time of
> the conversion and (ii) the wrongful exercise of dominion or control by defendant
> over the plaintiff's property, thus depriving plaintiff of possession.

Airlines Reporting Corp. v. Pishvaian, 155 F. Supp. 2d 659, 664 (E.D. Va.
2001) (citing Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 92 S.E.2d 359, 365 (Va.
1956)).  "It is important to note that the act of dominion or appropriation must be without
authorization from the owner of the property. . . . There can, of course, be no interference with
the owner's rights to the property if the owner has given permission to the act in
question."  United States v. Stockton, 788 F.2d 210, 216 (1986).  Police arrived to the scene
before Jenkins left his merchandise in the parking lot.  Police and Walmart employees checked
Plaintiff's merchandise against his receipt during the investigation.  Exhibit E, T15:13:20Z.

At the time Plaintiff's goods were given to Walmart by a police officer, Plaintiff had left
them in the parking lot to get into the ambulance.  Police asked Walmart to keep the goods for
Plaintiff to subsequently pick up and informed Plaintiff of this plan, which he did not object to.
Exhibit F, T15:20:19Z.  At the time Walmart took possession therefore, they did so with
authorization.  Later that same day, when Plaintiff was reminded to return and get his belongings
(Plaintiff had already returned to the parking lot and picked up his vehicle), Plaintiff reported

that he would not be returning to retrieve them.  <u>Exhibit D</u>, T17:58:55-17:59:15Z.  At that point, he abandoned his property.

> Abandonment of tangible personal property means that the owner thereof voluntarily relinquishes possession thereof with the intention of terminating his ownership and with no intention of vesting title in another. When such property has been so abandoned, the first person who takes possession thereof for the purpose of ownership generally, and in the absence of special circumstances, acquires title thereto.

<u>Talley v. Drumheller</u>, 143 Va. 439 (Va. Sup. Ct. 1925). Plaintiff did not object to Walmart holding his merchandise while he went to the hospital, which would necessarily require him to take it back if he wished to have it again.  However, at some point after this, he ultimately decided that he did not want to return for his belongings – Plaintiff abandoned his property at Walmart.  Plaintiff alleged that his goods were converted because Claims Management Inc. (CMI), a claims administrator for Walmart, "notified Jenkins on July 11, 2018 that he was not entitled to the purchased goods or a refund." Doc. 20, ¶ 23. CMI sent Plaintiff a letter on July 11, 2018 denying his claim related to his "injury."  <u>Exhibit J</u>.  However, CMI's letter was in response to Plaintiff's correspondence, in which Plaintiff alleged that he had been assaulted and attached a picture of his shoulder with a bruise on it.  <u>See</u> <u>Exhibit H</u>.  Plaintiff never raised any merchandise issue in his letters.  Therefore, the only inference from CMI's July 11, 2018 denial letter is that it is a denial of Plaintiff's allegations that he is entitled to compensation for injuries he sustained in the interaction he had with Mr. Webb.

In sum, Plaintiff was willing to have Walmart keep his merchandise while at the hospital. At some point after that, Plaintiff decided he did not want the merchandise any more.  He abandoned his property.

*IV.    Independently, Plaintiff's Evidence Cannot Support a Finding of Punitive Damages as a Matter of Law*

In his "Amended Class Action Complaint and Jury Demand," Plaintiff alleged that all three remaining counts of false imprisonment, assault and battery, and conversion were willful, shocking, outrageous, wanton, oppressive, malicious, reckless, and "evinced a spirit of criminal indifference to Plaintiff's rights." See Doc. 20, ¶¶ 74, 80, 96. Plaintiff seeks punitive damages in the amount of $350,000. Doc. 20, p. 25.

"The function of compensatory damages is to make the plaintiff whole. The function of punitive or exemplary damages is to punish the defendant for malicious conduct or to display to others an example of the consequences they may expect if they engage in similar conduct." F.B. C. Stores, Inc. v. Duncan, 214 Va. 246, 251 (1973). An award for punitive damages can only be supported by proof of actual malice. Id. at 252. "Actual malice, in turn, has been described by Virginia courts as 'conduct which is in conscious disregard of the rights of others and is wanton and oppressive.'" West v. Wal-Mart Stores, Inc., 1999 U. S. Dist. LEXIS 4324 (W.D.Va. March 24, 1999)(finding no evidence of actual malice and granting summary judgment on punitive damages in false imprisonment context) (quoting Nat'l Carloading Corp. v. Astro Van Lines, Inc., 593 F.2d 559, 565 (4th Cir. 1979)).

Even assuming the existence of probable cause is a trial issue, a lack of probable cause, or evidence that an employee is not performing their duty in a reasonable way, "cannot be blown up to show that he was guilty of actual malice." Id. at 251 (citing Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 686 (1967)). There is simply no evidence of actual malice in this case. The evidence viewed in the light most favorable to the Plaintiff would be that a Walmart associate

grabbed his cart forcefully enough for the cart to be overturned in an attempt to stop Plaintiff from leaving the store after Plaintiff would not produce a receipt.[4]

There is no evidence that Webb knew Plaintiff, that he knowingly targeted Plaintiff for any reason other than that he did not produce a receipt, that he said anything to Plaintiff other than asked about a receipt, or that he encouraged anyone else to commit an assault. There are simply no facts that point to an intent from Marvin Webb to act maliciously.

In addition, the Plaintiff can show no evidence whatsoever that his goods were converted with actual malice. Video footage shows the police officer telling Plaintiff that the police officer had asked Walmart to hold the goods at the store. Even if the court assumes Plaintiff could elicit sufficient facts on the conversion claim to create a jury issue, Plaintiff has no facts that support a conclusion that Walmart intentionally took Plaintiff's belongings to rob him of their use.

## CONCLUSION

In conclusion, this Court should GRANT Walmart's Motion for Summary Judgment because the totality of the circumstances show that Walmart's greeter Marvin Webb acted with probable cause, that Plaintiff abandoned his property at Walmart, and that there is no evidence of malicious behavior in this case. Walmart respectfully requests that this Court DISMISS Plaintiff's Amended Complaint with prejudice.

---

[4] Walmart believes the video footage contradicts this. When the nonmoving party's version of the facts is clearly contradicted by video evidence, the court is not bound to accept its version of events. See Scott v. Harris, 550 U.S. 372, 380 (2007); see also Jeremiah Henderson v. Austin K. McClain, Civil Action No. 7:19cv00685 (W.D.Va. November 19, 2020).

WAL-MART STORES INC.

By_____*s/*_____
                       Counsel

D. Cameron Beck, Jr. (VSB No. 39195)
Karissa T. Kaseorg (VSB. No. 87685)
McCandlish Holton PC
1111 East Main Street, Suite 2100
Post Office Box 796
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
cbeck@lawmh.com
kkaseorg@lawmh.com

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was emailed and mailed via

first class mail, postage prepaid, this 29th of January, 2021, to:

      Gary M. Bowman (VSB No. 28866)
      2728 Colonial Ave., Ste. 100
      Roanoke, Virginia 24015
      (540) 343-1173 Telephone
      gary@garymbowman.com
      *Counsel for Plaintiff*

                _____*s/*_____
                D. Cameron Beck, Jr. (VSB No. 39195)
                Karissa T. Kaseorg (VSB No. 87685)
                McCandlish Holton, P.C.
                P.O. Box 796
                Richmond, VA 23218
                (804) 775-3100 Telephone
                (804) 819-1174 Facsimile
                cbeck@lawmh.com
                kkaseorg@lawmh.com